***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff was employed by Defendant-Employer HBD Industries, Inc. in Salisbury, North Carolina from approximately October 10, 1977. *Page 2 
2. New Hampshire Insurance Company is the carrier on the risk, and AIG Claims Services is the servicing agent.
3. The parties are subject to the North Carolina Workers' Compensation Act.
4. Plaintiff's average weekly wage is $423.03, which yields a compensation rate of $282.16.
5. Plaintiff last worked for Defendant-Employer on February 24, 2009, when he was laid off.
 *********** EXHIBITS
The following exhibits were admitted into evidence before the Deputy Commissioner:
 • Stipulated Exhibit 1: Pre-Trial Agreement
 • Stipulated Exhibit 2: Indexed Set of Paginated Exhibits
 • Plaintiff's Exhibit 1: Photographs of Industrial Rolls
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Baddour's February 23, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether Plaintiff suffers from a compensable injury or occupational disease(s), specifically:
 a. Is Plaintiff's stenosing tenosynovitis (trigger fingers of the right ring and middle finger) related to his crush injury on 12/16/2008 and/or Plaintiff's job tasks throughout the course of his employment with Defendant-Employer? *Page 3 
 b. Is Plaintiff's carpal tunnel syndrome of the right hand/wrist (median neuropathy at the wrist) related to his crush injury on 12/16/2008 and/or Plaintiff's job tasks throughout the course of his employment with Defendant-Employer?
 c. Is Plaintiff's cubital tunnel syndrome of his right elbow related to Plaintiff's job tasks throughout the course of his employment with Defendant-Employer?
2. To what benefits, if any, is Plaintiff entitled?
3. Whether the Plaintiff is entitled to attorney's fees for the unreasonable defense of this matter?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before Deputy Commissioner Baddour, Plaintiff was sixty-four (64) years old. He did not graduate from high school and is illiterate. Plaintiff has been working since age sixteen, and his previous work includes painting, brick work, and construction.
2. Plaintiff was employed by Defendant-Employer for approximately thirty-one (31) years, from October 10, 1977, through February 24, 2009, the date of his termination.
3. For the majority of Plaintiff's employment with Defendant-Employer, he was employed as a "Roll Unwrapper," a job which he held for approximately eighteen years (from March 25, 1990, through November 2, 2008). *Page 4 
4. On November 3, 2008, Plaintiff was transferred to the 200 foot Utility position. On or about December 18, 2008, after approximately one month in this position, Plaintiff sustained a crush injury to his right middle finger while maneuvering a heavy pole.
5. Plaintiff filed a Form 18 on March 17, 2009, alleging injury to his right middle finger due to the crush injury. Defendants accepted compensability for this injury on a Form 63 filed April 2, 2009.
6. During Plaintiff's medical treatment, a nerve conduction study was conducted, resulting in subsequent diagnoses of carpal tunnel syndrome of the right hand/wrist, stenosing tenosynovitis of the right ring and middle finger, and cubital tunnel syndrome of the right elbow.
7. Plaintiff filed Amended Form 18s on June 23, 2009, for "Right Hand/Fingers CTS" and on October 16, 2009, alleging that Plaintiff's repetitive job tasks as a Roll Unwrapper caused and/or aggravated his right hand and arm injuries/diseases. These additional claims were denied by Defendants on multiple Form 61s filed on June 25, 2009, and October 20, 2009.
8. Plaintiff was employed by Defendant-Employer for eighteen years as a Roll Unwrapper where his job consisted of continuously and manually reaching and pulling multiple layers of nylon and cotton tape off of various sized rolls.
9. Plaintiff primarily used his right hand to complete the reaching, pulling, and tape removal, as he was born with cerebral palsy in his left hand. Plaintiff estimates that he has approximately 20% strength in his left hand, and that he used his right hand to complete 80% of his work for Defendant-Employer.
10. Plaintiff testified, and the Full Commission finds, that Plaintiff had to pull as hard as he could to get the tape rolling, and that he then continued a reaching and pulling motion for six hours of his eight hour workday, for eighteen years. He further testified that it took him less *Page 5 
than two hours per shift to put the rolls in order for tape removal, to clean his work space, and to take his lunch and two breaks.
11. Plaintiff testified, and the Full Commission finds, that Plaintiff had been having pain symptoms and difficulty making a fist with his right hand for several months before his December 16, 2008 crush injury; however, he did not inform his supervisors for fear that he would lose his job.
12. A former employee of Defendant-Employer and co-worker of Plaintiff, Johnny Pickeral, corroborated Plaintiff's testimony regarding his repetitive job tasks. Mr. Pickeral testified that his work station was approximately ten feet from Plaintiff's and that he had the opportunity to observe Plaintiff perform his work daily. Mr. Pickeral testified that for six hours out of Plaintiff's eight hour workday, Plaintiff was at his work station, walking back and forth, and manually reaching and pulling tape off of rolls. Mr. Pickeral testified that he considered this job task to be repetitive and to involve continuous use of Plaintiff's right hand and arm.
13. Kenny Aldridge, supervisor of Plaintiff in the roll stripper position, testified that he did not believe the motion Plaintiff performed to be repetitive; however, his opinion is given less weight than that of Plaintiff and Mr. Pickeral. Mr. Aldridge only performed the Roll Unwrapper position as a "floater" on and off for a non-specific number of years. Mr. Aldridge never consistently performed the Roll Unwrapper position as a part of his daily job tasks for multiple, consecutive eight hour shifts, for a consecutive number of years, or for the eighteen years that Plaintiff spent employed in this job task.
14. Dr. Thomas Ginn, an orthopedic surgeon, is Plaintiff's treating physician. Dr. Ginn testified that (1) Plaintiff's right ring and middle finger stenosing tenosynovitis is related to the December 16, 2008 crush injury; (2) Plaintiff's carpal tunnel syndrome was pre-existing to his *Page 6 
December 16, 2008 crush injury, and the crush injury aggravated this condition; and (3) Plaintiff's cubital tunnel syndrome is not related to the December 16, 2008 accident.
15. Dr. Stephen Furr, an orthopedic surgeon, conducted an independent medical examination of Plaintiff on October 6, 2009, at Plaintiff's request. As part of his examination, Dr. Furr took a history from Plaintiff that included the requirements of his job with Defendant-Employer. Dr. Furr testified that the "repetitive nature" of Plaintiff's job, Plaintiff's single hand dominance, and Plaintiff's crush injury, were all significant contributing factors in Plaintiff's development of right ring and middle finger stenosing tenosynovitis and carpal tunnel syndrome.
16. Dr. Furr further testified that the repetitive nature of Plaintiff's job placed him at an increased risk, greater than that of the general public, for developing tenosynovitis and carpal tunnel syndrome.
17. Dr. Furr did not render an increased risk or causation opinion regarding Plaintiff's right elbow cubital tunnel syndrome.
18. Dr. Scott Szabo, an orthopedic surgeon currently practicing medicine in Pittsburgh, Pennsylvania, performed a review of Plaintiff's medical records at Defendants' request. Dr. Szabo testified that he did not believe Plaintiff's tenosynovitis and carpal tunnel syndrome are related to the December 16, 2008 accident. However, Dr. Szabo did not examine or interview Plaintiff. Dr. Szabo relied solely on his reading of the medical records to form his opinion. Also, Dr. Szabo did not render an opinion as to whether Plaintiff's carpal tunnel syndrome was related to the repetitive nature of his work with Defendant-Employer for eighteen years as a Roll Unwrapper.
19. Dr. Steven Sanford, an orthopedic surgeon, also performed a review of Plaintiff's medical records at Defendants' request. Dr. Sanford testified that the December 16, 2008 crush *Page 7 
injury was not significant enough to cause Plaintiff's carpal tunnel syndrome. Dr. Sanford further testified that Plaintiff's job as a Roll Unwrapper for eighteen years did not cause, or place Plaintiff at an increased risk of developing tenosynovitis or carpal tunnel syndrome. Dr. Sanford did not examine or interview Plaintiff. For an understanding of Plaintiff's job tasks, Dr. Sanford relied on a job analysis done by Todd Murphy at Defendants' request. Dr. Sanford testified that he has no personal knowledge of Plaintiff's job tasks at Defendant-Employer.
20. The Full Commission finds that Mr. Murphy's job analysis should be afforded little weight because Mr. Murphy relied solely on the demonstration and interview of two current employees (a supervisor and a human resources manager) of Defendant-Employer for his understanding of the job. Mr. Murphy did not review any documents, interview any employees that had permanently held or consistently observed the Roll Unwrapper position, nor did he observe a Roll Unwrapper operator in his/her normal job operation.
21. Based on the foregoing, the Full Commission gives greater weight to the opinions of Dr. Furr and Dr. Ginn as these doctors had the opportunity to examine Plaintiff, and Dr. Furr had the opportunity to take a history from Plaintiff regarding his job tasks.
22. Based upon the preponderance of the competent evidence of record, the Full Commission finds that Plaintiff's crush injury and/or repetitive job tasks caused and/or aggravated Plaintiff's carpal tunnel syndrome and stenosing tenosynovitis. The Full Commission further finds that Plaintiff's job position as a Roll Unwrapper placed him at a greater risk for developing carpal tunnel syndrome and stenosing tenosynovitis than the general public.
23. Stephen Carpenter evaluated Plaintiff from a rehabilitation perspective and issued a rehabilitation evaluation report on March 15, 2010. Based upon Mr. Carpenter's testimony and the other evidence of record, the Full Commission finds that since Plaintiff's termination on *Page 8 
February 24, 2009, it has been futile for Plaintiff to seek employment given his current medical conditions, advanced age, illiteracy, low cognitive abilities, limited education, pre-existing diminished physical abilities, and work history. Plaintiff is not at maximum medical improvement and has been unable to undergo the carpal tunnel release surgery and middle finger release surgery as recommended by his treating physician, Dr. Ginn, due to the denied status of this claim.
24. The parties have stipulated that Plaintiff's average weekly wage is $423.03 yielding a compensation rate of $282.16. The calculation of Plaintiff's compensation is incorrect. Based on the average weekly wage of $423.03 the correct compensation rate is ($423.03 multiplied by .6667) $282.03 per week.
25. The Full Commission finds Defendants did not defend this claim without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with Defendant-Employer exposed him to a greater risk of developing carpal tunnel syndrome and stenosing tenosynovitis than members of the general public not equally exposed, and Plaintiff's employment with Employer-Defendant made a significant contribution to the development and/or aggravation of these conditions. Therefore, Plaintiff's carpal tunnel syndrome and stenosing tenosynovitis are compensable occupational diseases. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). *Page 9 
2. Plaintiff has failed to establish the compensability of his cubital tunnel syndrome. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983).
3. Plaintiff is entitled to temporary total disability compensation at the rate of $282.03 per week from February 24, 2009, and continuing until legally terminated by his return to work or Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his carpal tunnel syndrome and stenosing tenosynovitis as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the surgeries recommended by Dr. Ginn.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $282.03 per week from February 24, 2009, and continuing until legally terminated by his return to work or Order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's carpal tunnel syndrome and stenosing tenosynovitis as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the surgeries recommended by Dr. Ginn.
3. Plaintiff's request for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
4. A reasonable attorney fee of twenty-five percent (25%) of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as *Page 10 
follows: Twenty-five percent (25%) of any lump sum due Plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, Plaintiff's attorney shall receive every fourth (4th) compensation check due Plaintiff.
5. Defendants shall pay the costs.
This the 24th day of August, 2011.
 S/__________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________ STACI T. MEYER COMMISSIONER
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1